IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHAD THOMPSON                                                                                          PLAINTIFF

v.                                              Civil No. 4:14-cv-04039

JAMES SINGLETON, et al                                                                              DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.* Plaintiff is currently participating in a drug treatment program known as Project New Start in Newport, Arkansas as an alternative to continued detention in the Hempstead County Detention Center ("HCDC"). The events at issue occurred while Plaintiff was a pre-trial detainee incarcerated at the HCDC. On September 16, 2013 Plaintiff claims he was attacked in a holding cell by another inmate, Christian Archer, who had fired shots at him earlier that same day. Immediately after the inmate was removed from the cell Veronica Mauldin, a former detention officer with HCDC, deployed her taser on Plaintiff.

Plaintiff is asserting claims against each Defendant,[1] in both official and individual capacities, for failure to protect and excessive force. Plaintiff seeks compensatory and punitive damages against Defendants. Defendants argue that Plaintiff failed to notify them that he should not be placed in the same cell with the inmate who attacked him. In addition, they claim the force used against Plaintiff was reasonable and used for purposes of officer safety and maintaining order.

---

[1] Lieutenant Glover, Investigator Justin Crane and Sergeant Veronica Mauldin were named as defendants in Plaintiff's complaint. However, they were never served. Therefore, any allegations against these individuals were not before the Court and were not considered.

This matter was tried to the Court without a jury on April 14, 2016. The testimony of the following witnesses was heard: (1) Donna Stephens; (2) Michael Thompson; (3) Defendant Fransico Mercado; (4) Defendant Gary Dorman; (5) Defendant James Singleton; (6) Defendant Johnny Godbolt; (7) Veronica Mauldin; (8) Heath Ross; (9) Plaintiff Shad Thompson; and (10) Defendant Cecilia Bland.

Plaintiff offered Exhibits 1 – 8, including: (1) S.O.A.P. Notes – September 16, 2013; (2) Separate Defendants' Response to Plaintiff's Second Set of Interrogatories; (3) Hempstead County Sheriff's Department Taser Policy; (4) Hempstead County Sheriff's Department Incident Report – September 16, 2013; (5) Separate Defendants' Response to Plaintiff's First Set of Interrogatories and Second Request for Production of Documents; (6) Hempstead County Detention Facility Incident Report and Use of Force – Veronica Mauldin; (7) Video of September 16, 2013 incident between Inmate Archer and Plaintiff; and (8) Separate Defendants' Response to Plaintiff's First Request for Production of Documents. Plaintiff's Exhibits 1 - 8 were admitted without objection.

Defendants offered Exhibits 1 – 8, including: (1) September 16, 2013 Book-in Sheet; (2) September 16, 2013 S.O.A.P. Notes prepared by Joan McLean; (3) Incident Report and Use of force Number 13-0129 dated September 16, 2013 prepared by former Sgt. Veronica Mauldin; (4) Taser Use Report prepared by former Sgt. Veronica Mauldin; (5) Hempstead County Sheriff's Department Taser Policy; (6) Video of September 16, 2013 incident; (7) Suspect Arrest Report for Plaintiff dated September 16, 2013; and (8) Record of First Judicial Appearance for Plaintiff dated September 18, 2013. Defendant's Exhibits 1 – 8 were admitted without objection.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The Court now renders its findings of fact and conclusions of law pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The events at issue occurred while Plaintiff was a pre-trial detainee incarcerated at the HCDC. On September 16, 2013 around 7:30 a.m. Plaintiff was booked into the HCDC for possession of drug paraphernalia. He was initially placed in A-Pod (general population) in a cell with his brother. At that time Plaintiff did not inform anyone at HCDC that he had any enemies. At approximately 11:00 a.m. Plaintiff's parents contacted the Hempstead County Sheriff's Department to ask them to investigate an incident which occurred during the early morning hours of September 16, 2013 when several gun shots were fired close to their home. Defendant Gary Dorman and Investigator Justin Crane responded and determined numerous shots had been fired at Plaintiff's home.

Plaintiff was removed from the A-Pod cell in the early afternoon on September 16, 2013 by Defendant Fransico Mercado and told to pack up his belongings. Plaintiff was taken to booking where Defendant Cecilia Bland placed him in a holding cell at the direction of Defendant Dorman and Crane.[2] A short time later, Defendant Dorman and Crane removed Plaintiff from his cell so he could identify the individual/individuals who fired shots at him.

Plaintiff was initially reluctant to identify who had fired at him. After a discussion with Defendant Dorman, Plaintiff admitted he had been involved in purchasing drugs from an individual named Christian Archer and that Plaintiff had failed to pay Archer in full for the drugs. After being shown numerous photographs of suspects, Plaintiff identified Christian Archer and Antonio Perkens as the individuals who had fired shots at him earlier that morning. Plaintiff was

---

[2] Plaintiff's Exhibit 5 includes several of Defendants' answers to interrogatories that refer to Plaintiff as being placed in "protective custody." These responses are not binding admissions and were contradicted numerous times by the testimony of the witnesses.

3

then placed back in the holding cell. Prior to the conversation with Defendant Dorman, Plaintiff had not told anyone associated with the HCDC that Archer and Perkens had shot at him.

After Plaintiff identified Archer as the shooter, Defendant Dorman obtained a warrant to search Archer's residence. Defendant Dorman did not tell anyone at HCDC that Archer was a suspect in the shooting or that he was going to obtain a search warrant for Archer's home. Upon entering Archer's residence, Defendant Dorman and Crane found a considerable amount of drugs, drug paraphernalia and the gun used to fire the shots at Plaintiff. Archer was arrested and taken to the HCDC for booking around 7:00 p.m. on September 16, 2013. It is not clear from the record which officers transported Archer to the HCDC but the record does reflect that none of the named Defendants were involved. Defendant Dorman remained at Archer's home to complete the search and did not return to the HCDC when Archer was taken in and charged with terroristic threatening.

Defendant Bland, the officer who originally placed Plaintiff in the holding cell, went off duty at 6:00 p.m. and was replaced by Veronica Mauldin. Defendant Bland did not inform Mauldin that Plaintiff was in a holding cell in the booking area. While waiting to be formally booked into HCDC, Archer began acting up and yelling at the officers on duty disrupting the booking process. In response, Veronica Mauldin placed Archer in the holding cell where Plaintiff was being held so that she and the other HCDC officers could complete the booking process of others who had been arrested that same evening.

Veronica Mauldin was not aware of Plaintiff's whereabouts when she put Archer in the same holding cell and none of the named Defendants were present or on duty at that time. Within a few minutes of them being placed together, Archer and Plaintiff were seen fighting in the cell. The video tape of the incident shows that Mauldin and Officer Williams came to the cell, Mauldin unlocked the door and Officer Williams restrained Christian Archer. Mr. Archer did not appear to

4

have suffered any injuries during the incident with Plaintiff. Plaintiff was bleeding from a head wound above his left eye and began to walk toward the cell door. Veronica Mauldin deployed her taser on Plaintiff. There was no verbal warning given to Plaintiff prior to Mauldin's use of her taser.

Plaintiff sustained a cut above his left eye during the altercation with Archer. He was treated by the HCDC nurse within forty-five minutes of the incident. The nurse cleaned the cut, wiped off the blood from his face, applied three sterile stripes to his forehead, and gave him two Excedrin tablets. There was no evidence that Plaintiff sustained any other injuries or required any further treatment after September 16, 2013.

The use of force continuum policy at the HCDC provides for officers to use the following in successive order: (1) verbal command; (2) pepper spray if the inmate does not comply; (3) taser; and as a last resort (4) whatever force is necessary including lethal force. None of the named Defendants were involved with the use of force against Plaintiff. Defendants Sheriff James Singleton and Jail Administrator Johnny Godbolt admitted it is the policy of HCDC to separate known enemies and that if they had known about the shooting incident they would not have placed Christian Archer in the same cell with Plaintiff.

## CONCLUSIONS OF LAW

### I.     Official Capacity

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Hempstead County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Hempstead County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., at 828 (citations omitted).

There was no testimony or evidence presented that there was an unconstitutional policy or custom of the HCDC that contributed in any way to Plaintiff's injuries. Accordingly, Plaintiff's claims against Defendants in their official capacities fail.

## II.     Failure to Protect

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). For a pre-trial detainee like Plaintiff, this duty arises under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d

336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.*

From the evidence presented, the Court finds that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm when Veronica Mauldin placed Archer in the same cell with Plaintiff. Defendants Dorman, Singleton, Godbolt and Heath Ross all testified that it is the policy of HCDC to keep inmates separated when they are aware of previous fights or incidents between them. It is apparent that Defendant Dorman was aware of the shooting incident between Plaintiff and Christian Archer during the early morning hours of September 16, 2013. He knew that Archer was arrested regarding the incident and that he was being transported to HCDC to be booked. He also knew that Plaintiff was being held in a holding cell in the booking area at HCDC. However, there is no evidence that he informed Defendant Bland regarding this history or notified Veronica Mauldin that Plaintiff and Archer should be kept separate.

The second prong, however, is subjective requiring Plaintiff to show the official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id.* (*quoting Farmer,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted).

The only Defendants who had knowledge that Plaintiff was in the holding cell were Mercado, Bland, and Dorman.[3] However, none of these defendants were present when Mauldin – who is not a named defendant - put Archer in the cell with Plaintiff. Although it is clear that

---

[3] Defendants Singleton and Godbolt were not aware of the incident until after it occurred. Justin Crane had knowledge that Plaintiff was in the holding cell but he is not a defendant.

Archer should not have been placed in the same cell with Plaintiff, negligence alone does not amount to deliberate indifference. *Id.* at 549. Therefore, the Court finds Defendants Mercado and Bland did not deliberately disregard Plaintiff's health or safety.

With respect to Defendant Dorman, the Court finds that he knew of the risk posed by failing to keep Plaintiff and Archer separated. His failure to tell the HCDC staff that he had arrested Archer for shooting at Plaintiff and that Archer was being brought to the HCDC for booking set in motion the events which caused Plaintiff to suffer injuries at the hands of Archer. The law is clear that a prison official may be held liable under the Eighth Amendment if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Walton v. Dawson,* 752 F. 3d 1109 (8th Cir. 2014). *See also Farmer,* 511 U.S. at 837-39, 114 S. Ct. (1970). Even though there was no evidence that Defendant Dorman intentionally allowed Plaintiff to be placed in harm's way, the Court finds that his inaction constitutes deliberate indifference.

Even though Plaintiff has demonstrated deliberate indifference on the part of Defendant Dorman, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." *Id.* In *Irving*, the inmate was assaulted by another inmate at the instigation of prison guards. He suffered injuries to his jaw and nose, which caused him difficulties in breathing for two months after the attack. *Id*. at 445. The Eighth Circuit held these injuries were sufficiently serious to support a failure to protect claim. *Id.* at 448. In comparison, a scratch or cut on the cheek that requires only one pain pill for treatment is considered a *de minimis* injury. *See Chavero-Linares*, 2013 WL 5655559, *8 (N.D. Iowa 2013).

Plaintiff was attacked by Christian Archer and as a result sustained a cut above his left eye. He was seen and treated by the HCDC nurse within forty-five minutes of the incident. According to the HCDC nurse's report, Plaintiff's wound was superficial. The nurse cleaned the cut, wiped off the blood from his face, applied three sterile stripes to his forehead, and gave him two Excedrin tablets. There was no evidence that Plaintiff required any further treatment after September 16, 2013. Consequently, the Court finds Plaintiff did not suffer a sufficiently serious injury to warrant liability on the part of Defendant Dorman. Accordingly, Plaintiff's claims for failure to protect fail.

### III. Excessive Force

On September 16, 2013 when the incident occurred Plaintiff was a pre-trial detainee. "Because [Plaintiff] was a pre-trial detainee at the time of the alleged violation of [his] constitutional rights, we analyze [his] claim against [Defendants] under the Fourteenth Amendment, rather than the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citations omitted). Therefore, the objective reasonableness standard should be used in the analysis of Plaintiff's excessive force claim. *See Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir. 1989).

The evaluation of excessive force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments, rely on the same objective reasonableness standard as arrestee claims grounded in the Fourth Amendment. *Andrews v. Neer,* 253 F.3d 1052, 1060 (8th Cir. 2001) (citing *Schoemehl,* 878 F.2d at 1048-9). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials acted in an objectively reasonable manner in light of the facts and circumstances confronting them without regard to their underlying

intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court should consider the reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Finally, the Court should consider whether the totality of the circumstances justifies the use of force. *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir. 1990).

The Court is troubled by the force used against Plaintiff by Veronica Mauldin. A review of the video of the incident shows Plaintiff with blood on his face walking toward the cell door after Christian Archer was removed from the cell. Without any verbal warning, Mauldin tased Plaintiff knocking him off his feet. This action does not follow the HCDC's own use of force continuum policy. However, Veronica Mauldin is not a defendant in this case and none of the named Defendants were involved in the use of force against Plaintiff. Therefore, Plaintiff's claim for excessive force fails.

## CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court finds that Defendants James Singleton, Johnny Godbolt, Cecilia Bland, Gary Dorman, and Fransico Mercado are entitled to judgment in their favor and against Plaintiff Shad Thompson. A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED,** this 28th day of June 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge